IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-31-KS

| | |
|---|---|
| PHILLIP M. BELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | **ORDER** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Phillip M. Bell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On November 30, 2021, the court held oral argument in this matter. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #20], denies Defendant's Motion for Judgment on the Pleadings [DE #26], and remands the case

to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on July 24, 2017, with an alleged onset date of March 1, 2017. (R. 12, 190–202.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 12, 78–81, 129–30.) A hearing was held on February 25, 2019, before Administrative Law Judge ("ALJ") Joseph L. Brinkley, who issued an unfavorable ruling on June 5, 2019. (R. 9–59.) On April 6, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On June 2, 2020, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389,

401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In

3

making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter relevant to the DIB claim, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2020. (R. 14.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 1, 2017. (*Id.*) Next, the ALJ determined Plaintiff had the severe impairments of spinal disorder, bilateral chondromalacia, left shoulder impairment with pain, essential hypertension, asthma, and morbid obesity. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 15.) The ALJ expressly considered Listings 1.02, 1.03, 1.04, 2.02, 2.03, 2.04, 3.03, 6.02, and 11.04. (*Id.*)

4

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can occasionally use his left non-dominant upper extremity for overhead lifting, reaching, pulling, and pushing. Otherwise, he can frequently use his upper extremities to lift, reach, pull, and push in all other directions. [Plaintiff] can occasionally stoop, kneel, and crouch. [Plaintiff] can occasionally climb stairs and ramps. He can occasionally use his bilateral lower extremities to operate foot and leg controls. [Plaintiff] cannot climb ladders. He may occasionally be exposed to extreme temperatures and concentrated levels of strong fumes, odors, and other pulmonary irritants. [Plaintiff] cannot work around dangerous moving mechanical parts or at unprotected heights.

(R. 15–16.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 16.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 19.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: marker (DOT #209.587-034), office helper (DOT #239.567-010), and router (DOT #222.587-038). (R. 20.) The ALJ concluded that Plaintiff has not been disabled under the Act since March 1, 2017, Plaintiff's alleged onset date. (R. 21.)

5

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by:

(A) improperly evaluating the opinions of consultative examiner Dr. Steven Ferguson, MD (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #21] at 10–14);

(B) failing to conduct a function-by-function assessment of Plaintiff's work-related abilities and to provide a narrative discussion as to the RFC assessment (*id.* at 15–16); and

(C) improperly evaluating Plaintiff's statements about the severity of his symptoms (*id.* at 16–21).

The latter two arguments will be addressed together because they are related. For the reasons explained below, remand to the Commissioner is necessary.

### A. Dr. Ferguson's Report and Opinions

Plaintiff argues that ALJ Brinkley erred by rejecting the opinions of consultative examiner Dr. Ferguson, or at least erred by failing to explain why he rejected Dr. Ferguson's opinions. When explaining why he rejected Dr. Ferguson's opinion that Plaintiff had the RFC to perform only sedentary work with additional limitations as to standing and manipulation, ALJ Brinkley said:

> Dr. Ferguson's opinions reflect a view of [Plaintiff]'s functional capacity that is too limiting. Dr. Ferguson opined that [Plaintiff] was limited to sedentary work and that he would need to change positions every 15 minutes. He also concluded that [Plaintiff] had significant manipulative limitations. These findings are not wholly supported by the entire record for the reasons described above. Dr. Ferguson's own objective clinical findings show that [Plaintiff] retains adequate range of motion and strength to engage in light work with the relevant limitations contained in this decision. Because Dr. Ferguson's opinions are not entirely

6

consistent with his own observations or the other objective evidence, the undersigned finds them unpersuasive. (Ex. 6F).[1]

(R. 18–19.)

For claims filed after March 27, 2017, such as Plaintiff's, the Social Security regulations no longer require an ALJ to explain the particular weight assigned to a medical opinion. 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). The updated regulations identify several factors for an ALJ to consider when evaluating a medical opinion and specify that "consistency" and "supportability" are the most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Other factors include, but are not limited to, the medical source's relationship with the claimant, the source's specialization, and the source's understanding of the Commissioner's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(b)(3)–(5), 416.920c(b)(3)–(5). These revised regulations exist against the backdrop of Fourth Circuit precedent, which continues to require, for the purpose of facilitating meaningful review, that an ALJ explain how the evidence led to his conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))); *Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions"). The Commissioner remains bound by the agency's ruling requiring ALJs to "explain how

---

[1] Exhibit 6F of the administrative record contains Dr. Ferguson's report, which sets forth his clinical findings, function-by-function assessment, and opinions. (R. 403–414.)

7

Case 2:20-cv-00031-KS   Document 32   Filed 03/01/22   Page 7 of 14

any material inconsistencies or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

There are several problems with ALJ Brinkley's assessment of Dr. Ferguson's opinions which frustrate review. First, in the section preceding the paragraph containing ALJ Brinkley's evaluation of Dr. Ferguson's opinions, ALJ Brinkley never provides any reasons for discrediting Dr. Ferguson's opinions. ALJ Brinkley merely summarizes evidence. (R. 16–18); *see Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) ("[O]ur precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018))). Second, it is unclear what the phrase "retention of adequate range of motion and strength" means in the RFC context; ALJ Brinkley does not explain what he means by this terminology. Third, ALJ Brinkley never explains how the opinions in Dr. Ferguson's report are inconsistent with the clinical findings in that report. The only apparent inconsistency is that ALJ Brinkley's interpretation of Dr. Ferguson's findings is inconsistent with Dr. Ferguson's opinion that Plaintiff is limited to sedentary work with additional limitations. But that only means ALJ Brinkley disagreed with Dr. Ferguson, not that there are internal inconsistencies in Dr. Ferguson's report. The foregoing problems are even more pronounced because there are several factors in the regulations that would appear to count in favor of Dr. Ferguson's opinions. *See* 20 C.F.R. §§ 404.1520c(b)(1)–(3), (5), 416.920c(b)(1)–(3), (5) (Dr. Ferguson examined Plaintiff; as a consultative examiner, Dr. Ferguson would appear familiar with the Commissioner's

8

policies, regulations, and evidentiary requirements; and Dr. Ferguson's opinions as to Plaintiff's RFC appear consistent with and supported by medical[2] and non-medical evidence in the record). Taking all of these problems together, the court is left to guess why ALJ Brinkley rejected Dr. Ferguson's opinions. Therefore, remand is necessary. *See, e.g., Mascio*, 780 F.3d at 637.

### B. RFC, Functional Assessment, and Symptom Evaluation

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(1). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If necessary, an ALJ must "explain how any material

---

[2] As ALJ Brinkley noted, medical evidence showed, for example, (i) "extensive epidural lipomatosis throughout the lumbar region with severe narrowing of the spinal canal and thecal sac compression," (ii) degenerative joint disease in both knees and an unrepaired torn rotator cuff, (iii) consistent complaints of pain and weakness in Plaintiff's knees and shoulders, and (iv) "severe chondromalacia of the right patella accompanied by a large joint effusion." (R. 17.)

9

inconsistences or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe*, 826 F.3d at 189 (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311 (citing *Woods*, 888 F.3d at 694). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). "An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review." *Parker v. Colvin*, No. 4:13-CV-38-FL, 2014 WL 2604282, at *3 (E.D.N.C. June 11, 2014). Where a court is "left to guess about how the ALJ arrived

at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

The Fourth Circuit has emphasized that the function-by-function assessment of a claimant's abilities, which is a necessary prerequisite to the RFC finding, must be based on the correct regulatory framework, i.e. the framework set forth in 20 C.F.R. §§ 404.1545, 416.945, and SSR 96–8p. *Dowling v. Comm'r of SSA*, 986 F.3d 377, 387–88 (4th Cir. 2021) (noting that the ALJ failed to cite to the regulatory framework in 20 C.F.R. § 416.945 and explained in SSR 96–8p and erred by relying exclusively on the symptom-evaluation framework explained in SSR 96–7p and SSR 16–3p). In *Dowling*, the Fourth Circuit faulted the ALJ, as it had similarly done in *Thomas*, 916 F.3d at 311–12, for beginning with a statement regarding the claimant's exertional abilities without "first engaging in 'a function-by-function analysis.'" *Dowling*, 986 F.3d at 388 (quoting *Monroe*, 826 F.3d at 179).

Several aspects of ALJ Brinkley's decision lead to the conclusion that ALJ Brinkley, like the ALJ in *Dowling*, applied the incorrect framework when evaluating Plaintiff's RFC. First, the only reference ALJ Brinkley makes to 20 C.F.R. §§ 404.1545, 416.945, occurs in the "Applicable Law" section, which is not specific to this case and contains a boilerplate explanation of the Act and disability benefits application process.[3] (R. 14.) Similarly, ALJ Brinkley referenced SSR 96–8p only in

---

[3] In this section, ALJ Brinkley does not identify the need to perform a function-by-function assessment of Plaintiff's exertional abilities before assessing the RFC as required by regulation, SSR 96–8p, and Fourth Circuit precedent.

11

the "Applicable Law" boilerplate. (*Id.*) Second, ALJ Brinkley expressed Plaintiff's RFC "without first engaging in 'a function-by-function analysis.'" *Dowling*, 986 F.3d at 388 (quoting *Monroe*, 826 F.3d at 179, and discussing *Thomas*, 916 F.3d at 311– 12). In fact, there is no function-by-function assessment at all.[4] (R. 15–19.) Third, after expressing Plaintiff's RFC, ALJ Brinkley stated that this finding was based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, which are the regulations and concomitant SSR that address the process an ALJ uses to evaluate a claimant's symptoms. (R. 16.) *Dowling* identified this very problem and held that "an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Dowling*, 986 F.3d at 387. Fourth, the narrative explanation and analysis that follows ALJ Brinkley's RFC statement contains little, if any, analysis or explanation of the specific RFC findings. (*See* R. 16–19.) The court is left to guess how ALJ Brinkley arrived at the specific functional limitations based on the evidence he listed. *Cf. Thomas*, 916 F.3d at 311.[5] For the foregoing reasons, the court concludes that ALJ Brinkley applied an incorrect framework when assessing Plaintiff's RFC. *See Dowling*, 986 F.3d at 387–88.

---

[4] Dr. Ferguson's report, however, includes a detailed function-by-function assessment. (R. 409–14.)

[5] Had ALJ Brinkley performed the function-by-function assessment that is legally required, he likely would have provided explanation sufficient to permit meaningful review.

Furthermore, ALJ Brinkley incorrectly evaluated Plaintiff's statements about his symptoms. In the paragraph analyzing Plaintiff's statements, ALJ Brinkley stated:

> The medical evidence of record does not reflect the presence of objective findings that would support the presence of an impairment that would result in the extreme limitations [Plaintiff] alleges. . . . [Plaintiff]'s back and knee pain are not totally debilitating. [Plaintiff] was able to ambulate without an assistive device, and he retained an adequate range of motion in his back and extremities.

(R. 18.) ALJ Brinkley then continued to discuss the requirements for an assistive device. (*Id.*) This analysis is problematic for several reasons. First, the legal standard under the Act is not whether a claimant is "totally debilitated." *See Padgett v. Colvin*, No. 7:15-CV-89-BO, 2016 WL 3129181, at *3 (E.D.N.C. June 2, 2016) ("The ALJ found that the record did not demonstrate that plaintiff's conditions was total debilitating. This is not the appropriate standard. A claimant need not be found to be totally debilitated by his condition in order to be disabled, but rather must be found to be unable to perform sustained work-related activities in a work setting on a regular and continuing basis, meaning eight-hours per day, five days per week." (citations omitted)). Second, as discussed above in the context of Dr. Ferguson's report, it is unclear what "adequate range of motion" means here. Third, the relevance of an assistive device is unclear, as Plaintiff never alleged that he needed such a device, and there is no requirement that persons limited to less than light work use such a device. *See* SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983).

In sum, ALJ Brinkley applied an incorrect legal framework for assessing Plaintiff's RFC and for evaluating Plaintiff's statements about his symptoms. He did

13

not perform a function-by-assessment of Plaintiff's work abilities. He incorrectly stated the standard for disability under the Act. And he failed to explain how he reached his conclusions about Plaintiff's functional abilities in the face of countervailing material evidence. Accordingly, remand to the Commissioner is ordered.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #20] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #26] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 1st day of March 2022.

_____
KIMBERLY A. SWANK
United States Magistrate Judge